The People of the State of New York ex rel. William J. Schieffelin, Respondent, v. James J. Walker, as Mayor of the City of New York, et al., Constituting the Board of Estimate and Apportionment of the City of New York, Appellants.

Charles W. Berry, as Comptroller of the City of New York, Respondent.

**Municipal corporations — New York city — officers — mandamus — power of Board of Estimate and Apportionment to authorize Comptroller to issue short term bonds and provide items for amortization in budget of 1928 in absence of certification by Comptroller of amount required — authority of Comptroller to determine when to issue city bonds — discretion subordinated to duty to put bonds on market before date fixed by Board of Estimate and Apportionment for their maturity — erroneous issuance of mandamus requiring that item for amortization installment be striken from budget.**

1. The Board of Estimate and Apportionment of the city of New York had power to authorize the Comptroller of that city to issue four-year bonds before the end of the year 1927 to raise funds to provide for the construction of the subway system and provide for the first amortization installment thereon in the budget for the year 1928, although the Comptroller had not certified to the Board his estimate of the amount required for such amortization installment. The charter provisions (L. 1901, ch. 466, §§ 206, 229) relative to certification by the Comptroller are general in their terms and make the Comptroller the source of information rather than the authority for necessary items. Default in such certification by him does not relieve the Board from its duty to include such items in the budget. If the Comptroller omits to certify a legal item the Board may supply it.

2. A contention that the Comptroller has the right to determine when to issue bonds of the city and that the Board of Estimate and Apportionment may not lawfully include any amortization items therefor in the budget until the Comptroller has furnished his certified estimate of the amount of such items, cannot be sustained. Although the Comptroller has, under the charter, in a general way, a wide discretion as to when the bonds of the city shall be issued, when the Board of Estimate and Apportionment seeks to put into immediate

operation a plan of financing subway construction which calls for an issue of bonds maturing on a given date, discretion, if there is any, must at least be subordinated to the duty to put the bonds upon the market before the date of their maturity. There is nothing in the charter or elsewhere which makes the will of the Comptroller absolute in these matters. As an administrative officer of the city, he has no legislative powers. He does not control the fiscal concerns of the city to the extent that he alone may determine for what terms the subway construction bonds of the city shall be issued. It is for the Board of Estimate and Apportionment to determine policies and for the Comptroller to execute them. (New York City Charter, §§ 206, 227, 229; Rapid Transit Act, § 37, subd. 1.)

3. It was accordingly error to grant a motion for a peremptory order of mandamus requiring defendants to eliminate from the budget of 1928 an item for an amortization installment on rapid transit corporate stock for the independent subway system maturing in 1929, 1930 and 1931.

*Matter of Schieffelin* v. *Walker*, 222 App. Div. 260, reversed.

(Argued January 18, 1928; decided February 14, 1928.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 16, 1927, which unanimously affirmed an order of Special Term granting a motion by relator for a peremptory order of mandamus to compel defendants to eliminate from the New York city budget for 1928 an item for an amortization installment on Rapid Transit corporate stock maturing in 1929, 1930 and 1931.

*George P. Nicholson, Corporation Counsel (Charles L. Craig* and *William E. C. Mayer* of counsel), for appellants. The court was in error in assuming that the absence of an estimate and certificate of the Comptroller nullified the action of the Board of Estimate and Apportionment in making provision for the payment of the city's debt. (*Grimmer* v. *Tenement House Dept.,* 205 N. Y. 549; *People ex rel. Werner* v. *Prendergast,* 206 N. Y. 405; *Wintersteen* v. *City,* 220 N. Y. 62; *Matter of City of New York,* 217 N. Y. 1; *City* v. *New York City R. Co.,* 193 N. Y. 543; *People ex rel. Metropolitan Life Ins. Co.* v.

21

*Knapp,* 193 App. Div. 413; *People* v. *Karr,* 240 N. Y. 348.) The Board of Estimate and Apportionment is fully empowered to fix the time of maturity of such corporate stock. (*Reformed P. D. Church* v. *M. A. Bldg. Co.,* 214 N. Y. 268; *People ex rel. Snyder* v. *Hylan,* 212 N. Y. 236; *Litchfield Constr. Co.* v. *City of New York,* 244 N. Y. 251.)

*Leonard M. Wallstein* and *Ralph M. Frink* for respondent. The attempted appropriation of $13,000,000 for " amortization installment on Rapid Transit corporate stock * * * maturing in * * * 1931 " is unauthorized, illegal and void, because there is no such corporate stock issued and outstanding to be amortized and there was none such when the 1928 city budget became operative on January 1, 1928. (*Matter of City of New York,* 218 N. Y. 274; *People* v. *Flack,* 216 N. Y. 123; *Bull* v. *Burton,* 227 N. Y. 101; *Matter of Cooper,* 93 N. Y. 507.) The attempted appropriation of $13,000,000 in the city budget for 1928 is illegal and void, because it lacks the essential foundation, the estimate and certificate of the Comptroller, which is required by charter sections 206 and 229 and which is here absent not by inadvertence or obstinate refusal of the Comptroller, but because the bonds to be amortized by the appropriation were not issued, the Comptroller knew they would not be issued and, in fact, they have not been issued and are not outstanding. (*Schieffelin* v. *Hylan,* 106 Misc. Rep. 347; 188 App. Div. 192; 227 N. Y. 593; 227 N. Y. 669; *Bd. of County Commrs. of St. Louis Co.* v. *Nettleton,* 22 Minn. 356; *Lancaster Co.* v. *City of New York,* 214 N. Y. 11; *Merritt* v. *Village of Portchester,* 71 N. Y. 309; *People* v. *City of Geneva,* 98 App. Div. 383; *Hellwig* v. *City,* 158 N. Y. Supp. 475; *People ex rel. Dady* v. *Prendergast,* 203 N. Y. 1; *Schieffelin* v. *Henry,* 123 Misc. Rep. 792.)

*Robert Jordan* and *Austin P. Boleman* for Comptroller of the City of New York, respondent. The Comptroller's.

estimate and certificate are necessary under charter section 229, and consistent with charter section 149 in that the Department of Finance shall have control of the fiscal concerns of the corporation, and the failure to include the appropriation in question in such estimate and certificate clearly indicates that the Comptroller, in the exercise of his discretion, did not deem it advisable and pertinent in the instant case that such sum was necessary at the present time to pay an obligation to be incurred in the future. (*Grimmer* v. *Tenement House Dept.*, 205 N. Y. 549; *People ex rel. Werner* v. *Prendergast*, 206 N. Y. 405; *Wintersteen* v. *City*, 220 N. Y. 62; *Matter of City of New York*, 217 N. Y. 1; *Story* v. *Craig*, 231 N. Y. 40.)

POUND, J.    On October 27, 1927, the Board of Estimate and Apportionment of the city of New York adopted two resolutions which read as follows:

"*Resolved*, By the Board of Estimate and Apportionment, in relation to various authorizations of rapid transit corporate stock of the City of New York heretofore made, pursuant to the provisions of section 37 of the Rapid Transit Act, the provisions of section 45 of the Greater New York Charter, and the requisitions of the Board of Transportation, for the construction of the city independent system of rapid transit railroads, that the term of the corporate stock thereby authorized, to the extent of Fifty-two million dollars ($52,000,000) now unissued, shall be four (4) years from the date of issue, and that the term of the balance of such various authorizations of corporate stock, unissued, shall be fixed and determined by resolution or resolutions to be adopted by this Board from time to time, and be it further

"*Resolved*, That the Board of Estimate and Apportionment hereby authorizes the Comptroller of the City of New York to issue and sell, before December 31, 1927, corporate stock to the par value of fifty-two million

dollars ($52,000,000) being that portion of the above mentioned various authorizations, as to which a term of four (4) years is hereinbefore fixed."

On October 31, 1927, it included in the budget for 1928 an item, following the resolutions quoted above, as follows:

" For the 1928 amortization installment on Rapid Transit Corporate Stock for the Independent Subway System, maturing in 1929, 1930, 1931......$13,000,000."

This item has been stricken from the budget by an order of peremptory mandamus granted at Special Term and affirmed by. the Appellate Division on the ground that it was illegal in the absence of an estimate and certificate of the Comptroller as a basis therefor.

The broad question is as to the existing authority of the Comptroller of the city of New York in the exercise of his power as the head of the Department of Finance to control the fiscal concerns of the corporation (Charter, § 149), to check the Board of Estimate and Apportionment in the exercise of its power under Rapid Transit Act (§ 37) to direct the Comptroller to issue the bonds of the city to provide the necessary means for the construction or equipment, or both, of the independent subway system.

That it is the duty of the Comptroller ̇to issue bonds when directed by the Board of Estimate is not questioned, but the respondents assert that he has the right to determine when to issue them and to issue them after the 31st of December, 1927; and that the Board of Estimate may not lawfully include any amortization items therefor in the budget for 1928 until the Comptroller has furnished his certified estimate of the amount of such items.

The specific question before the court on this appeal presents itself as follows: may the Board of Estimate and Apportionment authorize the Comptroller to issue four-year bonds before the end of the year 1927 and provide for the first amortization installment thereon in the budget for the year 1928, although the Comptroller has

not certified to the Board his estimate of the amount required for such amortization installment?

City officials can act only under their statutory authority. Their powers are limited and conditioned thereby. The answer depends, therefore, on an analysis of involved provisions of the city charter and other provisions of law.

The Board of Estimate and Apportionment of the city of New York, in the performance of the duties imposed on it by the charter (§ 226) adopts and transmits to the Board of Aldermen an annual budget " of the amounts estimated to be required to pay the expenses of conducting the public business of the City of New York." The budget includes items for the payment of interest and principal of the city debt which the Board of Aldermen may not reduce (§ 226). Its power in this connection is final if the items which it includes under this head are legal. The budget as made in October and completed on December 31, is the basis of the tax levy of the following year.

Section 227 of the charter provides for the payment of the city's obligations as follows:

" § 227. It shall be the duty of the board of estimate and apportionment, from time to time, to provide for the payment of the interest and principal of the bonds and other obligations of the city, or for which the city is liable, and also to provide for the payment to the commissioners of the sinking fund of any sums directed by special laws to be paid to said commissioners on account of such bonds or obligations and *in anticipation of their maturity*, and to provide for the raising of the money therefor, in accordance with such special laws and the laws under which such bonds and obligations were issued or created."

Section 228 of the charter defines the duty of the Board of Estimate when accumulations in the sinking fund are insufficient. It requires the Board to include in the annual

budget, on the certification of the Commissioners of the sinking fund, the amount necessary to meet deficiencies in the sinking fund when the accumulations therein are not sufficient to meet the payment of any bonds or stocks falling due in the next calendar year redeemable therefrom. This section has no application to the case before us except as it indicates a duty on the Board of Estimate to provide for deficiencies in the sinking fund on the certificate of the Commissioners of the Sinking Fund unchecked by any act of the Comptroller. This duty is, however, wholly distinct from the duty of providing in advance for annual payments to the sinking fund.

Section 206 of the charter provides for the creation of a sinking fund for the purpose of liquidating the principal of the bonded debt of the city of New York incurred on or after January 1, 1898, as to which no provision for the payment thereof otherwise than from taxation is made, with certain inapplicable exceptions, and further provides as follows:

" For the redemption of such debt out of said sinking fund there shall be annually included in the budget and paid into the sinking fund of the city of New York herein created, *an amount to be estimated and certified by the comptroller*, and to be by the board of aldermen and the board of estimate and apportionment inserted in the budget for each year, which with the accumulations of interest thereon shall be sufficient to meet and discharge such bonds or stocks by the time the same shall be payable."

Section 229 of the charter provides there shall annually be set apart and paid over " to the commissioners of the sinking fund, as hereinafter directed, and invested by them in the manner provided by law, *a sum sufficient*, with the accumulation of interest thereon to meet and discharge the amount of said bonds or stocks by the time the same shall be payable, *as the same shall be estimated and certified by the comptroller.*"

Section 37, subdivision 1, of the Rapid Transit Act (L. 1891, ch. 4, as amended) reads as follows:

" For the purpose of providing the necessary means for such construction, or equipment, or both   *   *   *   of any such road or roads   *   *   *   the board of estimate and apportionment   *   *   *   from time to time, and as the same shall be necessary   *   *   *   shall direct the Comptroller   *   *   *,   and it shall thereupon become his duty, to issue the bonds of said City."

Section 45 of the charter reads as follows:

" The board of estimate and apportionment and the comptroller of the city· of New York shall, anything herein contained to the contrary notwithstanding, be subject to all the duties and obligations prescribed in said chapter four of the laws of eighteen hundred and ninety-one as amended for the board of estimate and apportionment and·comptroller therein mentioned.   Upon the execution of any contract made pursuant to chapter four of the laws of eighteen hundred and ninety-one, as amended, the board of rapid transit railroad commissioners may, in its discretion, make request upon the board of estimate and apportionment for the authorization of such corporate stock, either for such amount from time to time as they shall deem the progress of the work to require, or for the full amount sufficient to pay the entire estimated expense of executing such contract.   In case they shall make requisition for the entire amount, the comptroller shall endorse on the contract his certificate that funds are available for the entire contract whenever such stock shall have been authorized to be issued by said board of estimate and apportionment; and in such case such stock may be issued from time to time thereafter in such amounts as may be necessary to meet the requirements of such contract."

These sections are not to be read as disconnected and independent provisions of law.   They are to be construed, if possible, as a harmonious whole, providing a practical

and consistent scheme of municipal administration in connection with the construction of the subways. It, therefore, becomes necessary, for a proper understanding of them, to state the source of the controversy which has arisen between the Comptroller and the Board of Estimate.

The resolutions of the Board of Estimate and Apportionment mark a new policy in relation to the method of raising funds to provide for the construction of the subway system. The Board of Transportation, which is constructing the new city system under authority granted to it by Laws of 1924, chapter 573, recommended such change of policy. It had been the practice of the Board of Estimate, as funds were needed, merely to authorize the Comptroller to issue a stated amount of corporate stock, without specifying either the term or the date of issue. The Comptroller then issued fifty-year corporate stock as and when funds were required, having in view a favorable market for such stock. Under the authority conferred on him by section 189 of the charter, he issued corporate stock notes maturing within a period not exceeding one year in anticipation of the sale of corporate stock or serial bonds authorized at the time such notes were issued when he deemed it for the best interest of the city to do so, and thereby deferred the issue of the long term stock when in his judgment sound financing of the debt so required. The present policy rests on the theory that the independent subway system cannot be made self-sustaining on a five-cent fare unless not more than forty per cent of its cost is paid by the issue of the usual long term corporate stock and that the balance should be paid out of taxes through the issue of short term stock. The taxpayers would thus pay sixty per cent of the burden of building the subways and posterity would have its burdens lessened. With the soundness of this policy we have no concern. It may be wise or unwise. Opinions differ as to that. We have to consider merely the dis-

tribution of power between the Comptroller and the Board of Estimate in relation thereto.

The appellants take the position that the charter requires the Board of Estimate to make provision in the annual budget for the redemption of the city debt; that, as some of its debt is payable from sinking funds, it imposes upon the Comptroller the duty of furnishing annually to the Board, to aid it in the performance of its duty, certified information as to the amount necessary to make payments to the sinking fund for the coming year; and that the failure of the Comptroller to furnish such information does not affect the duty of the Board to provide for such debt redemption.

Unquestionably this contention is not without force. It is elaborated on the appellants' brief in substance as follows: It is the duty of the Board, and not of the Comptroller, to provide for the payment of the principal and interest of the city debt under section 227 of the charter (*supra*). Unquestionably the Comptroller is the proper official source of information as to the payments to be made from year to year to the commissioners of the sinking fund for the amortization of such debt, when provision is made for such payments. It does not follow that his determination is jurisdictional and that the Board of Estimate cannot act without it. The charter provisions relative to certification by the Comptroller are general in their terms. They make the Comptroller the source of information rather than the authority for the necessary items. Default in such certification by him does not relieve the Board from its duty to include such items in the budget. If the item is otherwise legal, its full legality does not depend on the official act of the Comptroller.

The wholesale application of a rule that the Comptroller's certified estimate has no authority might result in confusion in the administration of the city's financial affairs. We need not go so far in deciding this case as to so hold. The charter does not provide that no amortiza-

tion items shall be included in the budget other than those which are estimated and certified by the Comptroller. If the Comptroller omits to certify to the Board a legal item, we see no reason why the Board may not supply it.

The decision of the whole matter rests on the power of the Board of Estimate to inaugurate its new policy. If it has the power to inaugurate such a policy, the Comptroller may not set his will against the exercise of such power and thwart the action of the Board. Either the Comptroller has the full statutory power to determine for what term the subway construction bonds shall be issued, when he is directed to issue bonds by the Board, or the Board has full power to direct for what terms such bonds shall be issued, whenever it sees fit to exercise such power. If the Board may, before December 31, 1927, direct the Comptroller to issue subway bonds maturing on or before December 31, 1931, it may also provide for the amortization thereof in the budget of 1928 on the assumption that the Comptroller will obey its directions. The mandate to create a bonded debt maturing on or before a given date carries with it the duty to provide for the amortization thereof. (Charter, secs. 206, 227, 229, *supra.*)

Doubtless the Comptroller has, under the charter, in a general way, a wide discretion as to when the bonds of the city shall be issued. We need not now determine the exact limits of such discretion. But when the Board of Estimate seeks to put into immediate operation a plan of financing subway construction which calls for an issue of bonds maturing on a given date, discretion, if there is any, must at least be subordinated to the duty to put the bonds upon the market before the date of their maturity. We see nothing in the charter or elsewhere which makes the will of the Comptroller absolute in these matters. As an administrative officer of the city, he has no legislative powers. He does not control the fiscal concerns of the city to the extent that he alone may deter-

mine for what terms the subway construction bonds of the city shall be issued. It is for the Board of Estimate to determine policies and for the Comptroller to execute them.

The Board did not in terms direct the Comptroller to issue the four-year bonds before December 31, 1927. It merely authorized him to issue them before that date and fixed the date of their maturity at not later than four years thereafter; i. e., not later than December 31, 1931. Obviously the plan of financing the subway construction by the issue of four-year bonds could not be put into operation unless he did so issue them. The resolution made it mandatory upon the Comptroller to issue four-year bonds. He may not say: " Nevertheless, I will issue bonds for such terms as I see fit." When the Board authorized the Comptroller to issue four-year subway bonds it was justified in assuming that he would issue them as thus authorized and that he would not attempt to veto and destroy the plan of financing the subway construction adopted by the Board by substituting his own ideas as to the term for which the bonds should be issued and refusing to certify his estimate of the amount required for the sinking fund item. The power of the Board under these conditions to include a proper amortization item in the 1928 budget does not depend on the presence before it of some figures on a piece of paper over an official signature. It rests on its duty under the charter to provide for the proper appropriation to the sinking fund in anticipation of the issue of the bonds. The amortization item in the budget of 1928 was, therefore, proper, in anticipation of the issue of the bonds by the Comptroller.

The order of the Appellate Division and that of the Special Term should be reversed and the application for an order of peremptory mandamus denied, without costs.

CARDOZO, Ch. J., CRANE, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Ordered accordingly.